## CLARK & FREEMAN v. I. T. PATTERSON.

*Attachment.    Officer Disqualified by Interest.    Guardian.
Service of Writ.    Waiver.*

1.  An officer has no authority to complete the service of a writ after he is appointed
    guardian of the plaintiff in the writ, although he has commenced the service
    before his appointment; nor can another officer complete such service by mak-
    ing a different attachment.
2.  And if an officer completes the service of a writ after he is appointed guardian of
    the plaintiff, the defect is not waived by the defendant's appearing and plead-
    ing to the merits.

CASE against the defendant as sheriff. Trial by court,
September Term, 1885, Ross, J., presiding. Judgment for
the plaintiffs to recover the sum of $192.20. The case ap-
pears in the opinion.

*Grout & Miles*, for the defendant.

The right to complete the service of the writ existed by
common law. In the passage of R. L. ss. 860-61, the leg-
islature simply intended to modify a right that then existed
at common law.

Before the passage of that law, a sheriff, having com-
menced the service of a process before the expiration of
his term of office, could complete it afterwards. After
the passage of those sections, the sheriff could not only
complete a service, but could serve "writs and precepts in
his hands" at the expiration of his term whether service
had been commenced or not; and this was the only altera-
tion in the common law upon that point. *Ferguson* v. *Lee*,
9 Wend. 258; *Tuttle* v. *Jackson*, 6 Wend. 224. All that Jen-
ness did after his appointment as guardian was to deliver
the copies to the Eatons; and this he could lawfully do.
*Beattie* v. *Robin*, 2 Vt. 181; *Pearsons* v. *French*, 9 Vt. 349;

*Fifield* v. *Wooster*, 21 Vt. 215; *Drake* v. *Mooney*, 31 Vt. 617; *Collins* v. *Perkins*, 31 Vt. 624; *Jewett* v. *Guyer*, 38 Vt. 209.

*Edwards, Dickerman & Young*, for the plaintiff.

Jenness could not complete the service of the writ after he was appointed guardian of the plaintiff. His attachment must be treated as abandoned. He became interested and a party plaintiff. *Abbott* v. *Clark*, 19 Vt. 444; *Pepper* v. *Stone*, 10 Vt. 427; Tyl. Inf. 260; *Holden* v. *Scanlan*, 30 Vt. 178; *Lincoln* v. *Thrall*, 34 Vt. 113; R. L. s. 854; *Eyre* v. *Countess of Shaftesbury*, 2 Wms. Peere, 102; *Kelly* v. *Paris*, 10 Vt. 261; *Bank* v. *Parsons*, 21 Vt. 199; *Cleveland* v. *Deming*, 20 Vt. 534; *Nelson* v. *Denison*, 17 Vt. 73; *Warren* v. *Stockwell*, 9 Vt. 1; *Sewell* v. *Harrington*, 11 Vt. 141; *Clark* v. *Lyman*, 10 Pick. 45; *Smith* v. *Saxton*, 6 Pick. 483.

The opinion of the court was delivered by

WALKER, J. This is an action on the case against the defendant, sheriff of Orleans County, for the default of his deputy, George W. Jenness, to serve and return an execution in favor of the plaintiffs against L. E. Eaton, which was issued upon a judgment for $192.66, obtained by them against Eaton, before a justice on the 21st day of April, 1884, on a writ sued out by them on the 12th day of April and served by Jenness, as deputy sheriff, by attaching certain sewing machines, then in his custody, subject to two former attachments made by him, as such deputy, on writs in favor of Jethro J. Hill, one against L. E. Eaton and the other against Charles and L. E. Eaton, returnable at the February Term of Orleans County Court, 1884. Jenness as such deputy sold the sewing machines on the plaintiffs' execution, dated April 22, 1884, for $252.20 before the return day thereof and holds the avails, which he claims are first to be applied upon the two former attachments in favor of Hill, and refuses to pay the plaintiffs. The plaintiffs never consented to the machines being attached and sold subject to the Hill attachments.

September 29, 1883, Jenness as deputy commenced the service of the Jethro J. Hill writs by attaching the same sewing machines which he afterwards attached subject to the Hill attachment upon the plaintiffs' writs. On the 31st day of October, 1883, said Hill was duly adjudged by the Probate Court for the district of Orleans to be an insane person, and on the 5th day of November, 1883, Jenness was duly appointed and qualified as his guardian, and entered upon the discharge of his duties as such. On the 24th day of January, 1884, after becoming guardian of Hill, Jenness as deputy sheriff completed the service of the Hill writs by delivering to each of the defendants a copy of the attachments with a list of the property attached attested by him and by making a return of the property attached and his doings on the writs. The writs were subsequently entered in court and Jenness entered as guardian of Hill to prosecute them and the same are still pending.

On the 24th day of January, 1884, the Hill writs were put in the hands of Deputy Sheriff Miles, who made further service thereof by attaching one chip and delivering to each defendant a copy with the return of *his* doings thereon.

The plaintiffs claim that Jenness by accepting the guardianship of Hill became under the law the real plaintiff in the suits of Hill against the Eatons and was thereby disqualified to complete the service of the same and that all his doings in those suits as deputy after the acceptance of such guardianship are absolutely void, and that the attachments made by him in favor of Hill must be treated as legally abandoned. The defendant claims that the attachments are valid; that Jenness could, after becoming guardian, legally complete the service thereof, and that if he could not lawfully complete the service thereof the attachments are still valid, and that the defendants by appearing and answering to said suits on the service made by Deputy Miles waived the want of legal copies.

The plaintiffs' right to recover rests upon the validity of

the attachment of the sewing machines upon the two writs of Jethro J. Hill against the Eatons; and the validity of these attachments depends upon the authority of Jenness as deputy sheriff, after his appointment as guardian of Hill, to make return of the property attached thereon by him before his appointment, and to complete the service by attesting and delivering copies to the defendants as he did on the 24th day of January, 1884.

An attachment is not complete and perfect until the officer's return is made. An officer may seize and hold personal property until the return day, but unless he make a proper statement of it in writing on the writ and complete the service as required by the statute, it cannot be deemed an attachment.

An attachment of property is a method prescribed by statute for creating a lien upon the debtor's property, without his consent, to respond to the exigency of the writ and to satisfy the judgment that may be obtained against him. To constitute a valid lien upon property by an attachment all the requirements of the statute in making it must be strictly followed. It is a general principle that any failure to comply with what is enacted as necessary to be done by the officer in making an attachment, must be held to be fatal to any lien attempted to be acquired thereby. *Sumner v. Sherman*, 13 Vt. 609. The same principle applies in a proceeding for acquiring a *lien* upon property by virtue of a statute without the consent of the owner, as governs in a proceeding for acquiring *title* to property under the provision of a statute without the consent of the owner.

Sec. 881 R. L. requires that "a copy of the attachment and list of articles attached, attested by the officer serving the same, shall be delivered to the party whose goods and chattels are so attached," etc.

The official attestation of the attachment and list of articles attached, and the official certification in the officer's return on the writ, are essential parts of the service to make a

valid attachment. Without this the service is essentially defective. *Swetland* v. *Stevens*, 6 Vt. 577. The return on the writ to be effectual must not only show that this requirement of the statute has been complied with but it must be made and attested by an officer having authority under the statute to make the service. Every step that the statute requires to be taken in making and completing the attachment is an essential part of the service and must be made by an officer authorized in some of the ways provided by statute to make it. If it is not so made no lien will be acquired upon the property against a subsequent attaching creditor nor against the debtor unless he waives the want of compliance with the statute. It is as essential that the copies of attachment and list of articles attached shall be attested and the return on the writ certified by a duly authorized officer as it is that the property taken shall be seized and held by a proper officer.

The power to serve a legal process is conferred and regulated wholly by statute; and a valid attachment of property can be made only by such officer as the statute gives power to make it.

The question presented is not whether the sheriff or some other deputy sheriff might have completed the service commenced by Jenness, but whether the attachments commenced before his appointment as guardian and completed by him after his appointment are valid. No other officer delivered any attested copies of the attachments and list of articles attached to the defendants, or attempted to complete the service commenced by him. Deputy Miles, to whom the writs were delivered for further service, made no return as to the sewing machines attached by Jenness, and his doings on the writ in no way cured any defect in the attachment service commenced by Jenness, who alone undertook to complete the service of the attachments by attesting and delivering copies and making return on the writs after his appointment as guardian.

It is well settled that letters of guardianship create a trust coupled with an interest. *Pepper* v. *Stone*, 10 Vt. 427. It is not denied that Jenness' appointment as guardian of Hill made him interested in the Hill suits and a necessary party to their prosecution.

Sec. 854 R. L. enacts, that "no officer shall serve a writ" * * * "where he, or a private corporation of which he is a member, is a party or interested." This statute expressly incapacitates an officer when he is interested to serve a writ. It makes no provision for the completion of the service of a writ of attachment by the officer commencing it after he becomes disqualified by interest. By this statute Jenness on his appointment as guardian was divested of all authority as deputy sheriff to serve the Hill writs. His power to serve them ceased the moment his interest as guardian attached; and we think he could not thereafter do any official act in respect to completing the service commenced by him. If he could thereafter have legally completed the service commenced by him by attesting and delivering copies of the attachments and articles attached, he could for the same reason have attached other property if necessary in completing the service.

As the ministerial power to serve a legal process is conferred wholly by statute, it cannot be reasonably claimed that Jenness had any common law power, as deputy sheriff, to complete the service, especially when the statute in express terms prohibits it and cuts off all his official power to serve a writ wherein he is interested. Every act done by him thereafter in the service of the Hill writs was in contravention of the statute and void.

In the case of *Bank of Rutland* v. *Parsons*, 21 Vt. 199, Judge Bennett, in delivering the opinion of the court, says: "It may be regarded as a general principle that when a statute prohibits anything to be done, an act done in contravention of the prohibition must be adjudged inoperative and void if the statute cannot otherwise be

made effectual to accomplish the object intended by its enactment."

The object of this statute is apparent. Its prohibition of power in the officer to serve a writ wherein he is interested is absolute; and it applies whenever the officer's interest in the suit attaches. By this prohibition of the statute, Jenness, after becoming guardian of Hill, was legally incapable of completing the service of the writs in Hill's favor; and as there is no provision of the statute by which such service could be completed by him, the service already made by him before his disqualification must be held to have been legally abandoned. To hold otherwise would be making an exception to the absolute prohibition of the statute, which the legislature alone has jurisdiction to make.

The defect in the service complained of is not one of notice nor one of a formal character in the officer's *return*, which can be taken advantage of only by a plea in abatement; but the defect here complained of is in the *authority* of the person attempting to complete the service of the writs which was not waived by the defendant's appearing and answering to the merits of the suits; and this is the same whether the appearance was on the service made by Miles or Jenness. The rights of the subsequent attaching creditor cannot be prejudiced by such an appearance in a case where the sufficiency of the *authority* of the officer is involved. *Kelley* v. *Paris*, 10 Vt. 261.

The plaintiff's attachment and lien on the sewing machines were not subject to the Hill attachments, but superior thereto and they were entitled to have their execution satisfied out of the avails of the sale thereof.

Judgment affirmed.